WESTCO–CHIPPEWA PUMP CO. v. AUTO-PRIME PUMP CO.

No. 3455.

District Court, N. D. Ohio, E. D.
April 4, 1931.

Evans & McCoy, of Cleveland, Ohio (George F. Scull, of New York City, of counsel), for plaintiff.

Fay, Oberlin & Fay, of Cleveland, Ohio, for defendant.

WEST, District Judge.

On May 29, 1917, patent 1,228,267, relating to rotary pumps, was issued to Adolph Wahle with eight claims. On May 19, 1925, there was a reissue to the same patentee by which four claims were added and some insignificant alterations in the specifications. This suit is for the infringement of claims 3 and 6 of the reissue patent, 16,074. The defenses are invalidity and noninfringement.

The device which the plaintiff makes and sells under this patent consists essentially of a metal casing formed with an interior channel around the circumference, within which a flat circular disk with slots or buckets extending from the periphery a short distance toward the axis revolves in such a manner as to draw the water into the channel, carry it about the circumference, and discharge it into an outlet under considerable pressure. The prior art, as exhibited by the evidence, discloses a very similar casing with circumferential passage in Andrews 390,332. There, as in the patent in suit, the passage was directly connected with the inlet and outlet openings, and the lesser diameter of the passage was slotted to allow the Andrews rotor to operate within it. But, beyond this, I find nothing in the prior art which remotely suggests what is now embodied by the patentee. The Andrews rotor was an entirely different construction from that of Wahle, and I think operated upon a different principle. Wahle's former patent 1,146,375 covered a rotor of somewhat similar nature as the rotor of the patent in suit. It had buckets about the periphery in the form of V-shaped grooves, but there was no circumferential waterway, the rotor protruding into a horizontal pipe at the bottom of the cas-

ing. The evidence is that it had little effect in stimulating the flow of the water and was of no practical value. Both these patents were cited against Wahle's application in the Patent Office. Other patents were introduced by the defendant, but, so far as I see, none of them contain disclosures of any consequence. Both Bolton 184,952 and Brush 1,162,848 relate to pumps through which the water flows from inlet to outlet axially and across the blades of the rotor. There is no separation between inlet and outlet; and the construction is such that the water carried by the blades or buckets would not be thrown out radially, so that centrifugal force, which is a prime characteristic of Wahle, is absent. Meier 1,089,572, a suction fan for cleaning cotton, and Nash 1,091,529, which seems to be a contrivance for compressing and pumping air through the use of water as pistons [see Trane Co. v. Nash Eng. Co. (C. C. A. 1) 25 F. (2d) 267 at 270], show nothing of value respecting the patentee's problem.

It is fairly plain that the most the defendant hopes is to establish that, when Wahle entered the field, the state of the art was such and his advance so slight that he should be restricted to the exact form of device disclosed by him. And it is argued that Andrews' pump, which is the only portion of the prior art having any substantial relevancy, not only does what Wahle's device accomplishes, but operates on the same principle, and is structurally like it. It was demonstrated and is not denied by the plaintiff that Andrews produced a pump which works, and the court, after giving considerable consideration to the evidence, including the demonstration, is not prepared to express a definite opinion as to the principle of physics upon which it operates. One thing is impressive: The rotor is so constructed that through it is an uninterrupted passage from inlet to outlet, and it is difficult to see how there could be any substantially greater pressure at the latter than the former. The theory of Wahle's device is that it does build up pressure from the moment the water encounters his rotor at the inlet until it passes around the circumference to the outlet. The only communication between inlet and outlet is through the passage around the casing. As there is no chance to short circuit any accumulated pressure, the claimed result does not seem physically impossible, as it does in the case of Andrews.

The view of the defendant, as expressed by its expert, Mr. Brush, is that all these rotors, whether of Andrews, Wahle, or the defendant, operate on the same underlying

principle. He calls this "the eddy extension drag." Any roughening or irregularity upon an exterior surface moving through water will cause eddies; the action of these eddies in a circumscribed channel will, he says, accumulate and build up the pressure. He thinks centrifugal force of the water thrown off the periphery of a rotor by its revolutions has little, if anything, to do with it. Defendant's counsel goes to the extent of saying that a straight bar with buckets formed along the lower edge, moved swiftly through a straight channel of circumscribed area, where no centrifugal movement can be produced, would have the same effect, because of eddies created by the buckets, as seems to be produced by the revolving rotors of both plaintiff and defendant.

Mr. Brush says that this eddy extension drag theory is his own, and that he knows of no other quarter in which it is held. The expert for the plaintiff, Mr. Ray, has an entirely different view about the principle on which these rotors operate, in which centrifugal force plays a leading part. The court is convinced, and I think there is no dispute on the point, that the principle of the devices of the plaintiff and the defendant and their mode of operation is the same. I am not at all convinced that the Andrews device operates on a like principle.

I give little weight to the tests showing that under courtroom operation the Andrews pump produced a certain pressure, the plaintiff's substantially more, and defendant's much more than plaintiff's. If, as I understand, counsel claims that Wahle's advance over Andrews was so slight as compared to defendant's later advance over both that, even if defendant has appropriated the Wahle idea, the courts can give no relief because of the success that has attended the appropriation, then I do not agree. Wahle did not merely improve upon Andrews, but conceived something different. The structural differences between Andrews and the patent in suit are very marked. The blades or wings of Andrews which protrude into the water channel and which alone exert the propelling force are utterly different from the buckets of Wahle's rotor. The evidence shows that, after being emptied by centrifugal motion, the latter, as well as defendant's buckets, are filled by water entering at the sides; the Andrews construction prevents this. In my judgment, the evidence requires a finding that Wahle's advance over anything in the prior art, including his own former rotor, not only entitled him to a patent, but

was sufficient to protect him against other and later devices employing side buckets around the periphery of a rotor revolving in a restricted circumferential channel. This idea expresses his invention, and I think it is fairly embodied in the claims sued on, and further that the disclosure of his specifications, including the drawings, is entirely sufficient. On the latter point some claim is made that, because the dimensions of the rotor and channel are not more specific, Wahle does nothing but propose a problem for solution by experiment rather than solve one. But the evidence is quite clear that a device made according to the specifications and drawings will work, and accomplish more than the Andrews rotor. The fact that it is capable of improvement and has been improved by the plaintiff, and probably by the defendant, is not important.

The defendant makes and sells the alleged infringing pump under two patents which are in evidence, one to Ferguson, covering an impeller, and the other to Wood, covering a centrifugal pump in which the circumferential channel is formed by two movable rings inserted in the casing.

It claims structural differences which avoid infringement: First, that the circumferential passage in Wahle is constructed integrally with the casing. The claims of the plaintiff do not call for such integral construction. But, if they did, the defendant's rings would, I think, respond to the call. For they are so inserted and held in fixed positions that, if not structurally integral, they are at least operatively or functionally so. Clipper Belt Lacer Co. v. E–W Co. et al., 237 F. 602 (6 C. C. A.).

Second, defendant says its buckets are different. Those of the plaintiff extend from the median line of the periphery radially inward, and are in exact pairs, back to back. The defendant's buckets open out across the whole of the periphery and are staggered; the buckets on one side being between those on the other. They do not extend from the periphery directly toward the axis, the leading corner of each bucket is rounded, they are not so long as those of Wahle, and the bottoms seem to be a trifle more concave than his. Yet I think that the Wahle claims sued on read plainly upon the defendant's rotor and buckets. The claims call for a rotor "provided with a series of buckets therein each having a substantially flat bottom inclining from the periphery to the side thereof at a point adjacent the said annular partition and separated by transverse blades."

■ Nothing in this limits the buckets to such as start from a median point on the periphery. The transverse walls of Wahle present the appearance of blades, and he so designates them. But defendant separates its buckets by transverse partitions which are essentially the "blades" of the patent. There is more question about the bottoms of the buckets, which the claims say shall be "substantially flat." Where, as appears to be true in this case, the patentee does not intend a flat bottom, the expression used is not happy. The language of the specification does not cover the point, and from it no one can say how near flat the bottoms of the buckets were intended to be. But the drawings, which are part of the specifications (Lamb Knit Goods Co. v. Lamb Glove & Mitten Co., 120 F. 267–269 (6 C. C. A.) clear up the ambiguity. Fig. 2 shows a slightly concave bottom. The patentee could select his own language, but was bound to make his meaning reasonably plain and specific. Taking the drawing into account, I think he has done so. He shows that by "substantially flat" he meant a slight departure from flatness by concavity, and neither a convex nor corrugated surface. Defendant's buckets are also concave, and to the eye appear a trifle more so than Wahle's drawing shows. That difference will not avoid infringement, for it has been held that, where the degree of concavity in a device is not defined, a patentee is not limited to the exact degree shown by his drawing. Temple Pump Co. v. Goss Pump, etc., Co. (C. C.) 30 F. 440, 443. See, also, Winans v. Denmead, 15 How. 330, 343, 14 L. Ed. 717. According to the evidence, the purpose of the concave bottom is to permit water to flow through the bucket toward the periphery on an easy curve. This strengthens the view derived from the drawing that Wahle had no intention to limit himself to buckets with bottoms as nearly flat as possible.

Defendant cites and relies on Nat'l Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A.) 106 F. 693, where at page 712 it is said: "Where the advance towards the desideratum is gradual, and several inventors form different combinations which accomplish the desired result with varying degrees of operative success, each is entitled to his own combination so long as it differs from those of his competitors and does not include theirs."

But here the defendant's combination does include the essentials of Wahle, whatever is added thereto by defendant's changes in the form of its buckets.

■ Plaintiff calls attention to patent 1,619,286 issued to Burks in 1927 (Plaintiff's Exhibit 10), where the action of his rotor upon the water and the helical course said to be taken by the water is described. This is claimed to substantiate the theory of plaintiff's expert and discredit that of the defendant. But, being found in a patent subsequent to that of Wahle and no part of the prior art, the description is inadmissible as hearsay, and no attention is paid to it.

■ Considering all the evidence, including the presumption of validity of Wahle's patent arising from its having been granted over the references, the substantial sales of plaintiff's device, and that defendant appears to have followed Wahle's construction quite closely rather than anything in the prior art, the court holds claims 3 and 6 of the reissue patent sued on valid and infringed, and the usual decree of injunction and for an accounting may be entered.