STRONG–SCOTT MFG. CO. et al. v.
WELLER et al.

No. 11632.

Circuit Court of Appeals, Eighth Circuit.

June 10, 1940.

Charles W. Gerard, of Kansas City, Mo., and Donald H. Sweet, of Chicago, Ill. (Charles C. Reif, of Minneapolis, Minn., and Freeman, Sweet & Albrecht, of Chicago, Ill., on the brief), for appellants.

. Frank A. Whiteley, of Minneapolis, Minn., for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a decree enjoining appellants from infringing Letters Patent No. 1,944,932, for an "elevator bucket", granted January 30, 1934, to Blaine B. Gemeny and Burt I. Weller, and from applying the name "Calumet" to elevator buckets, ordering an accounting, and dismissing a counterclaim of appellant Screw Conveyor Corporation.

This suit was brought by Burt I. Weller, now the sole owner of the patent, against the Strong-Scott Manufacturing Company. The Weller Metal Products Company, of Illinois, the sole licensee under the patent, was joined as plaintiff, and the Screw Conveyor Corporation, of Illinois, which had made and sold the accused elevator buckets to the Strong-Scott Manufacturing Company, intervened on the side of that company. For convenience, the appellants will be referred to as "defendants".

The defendants challenged the validity of the patent. The Screw Conveyor Corporation asserted that it had an implied license from the plaintiffs to make and sell the patented buckets; and that the word "Calumet", which was applied to buckets made and sold by plaintiffs and also to those made and sold by the Screw Conveyor Corporation, was the trade-mark of that corporation; and in its counterclaim it asked for an injunction against the use by plaintiffs of the word "Calumet".

The issues which the court below was called upon to decide were:

1. Was the patent invalid. (a) for failure sufficiently to describe and claim the invention; (b) for want of patentable invention; (c) because Burt I. Weller was not a joint inventor?

2. Were the claims of the patent infringed?

**3.** Was the word "Calumet" as applied to elevator buckets a trade-mark owned by the Screw Conveyor Corporation?

A brief explanation of the alleged invention and of the background of the controversy will be helpful.

Elevator buckets, also known as elevator cups, are metal receptacles made to be fastened to an endless belt in proximity to each other so as to form an endless belt conveyor for use in elevating or carrying grain from the bottom to the top of a grain elevator. The entire mechanism used for elevating the grain is called a "leg". The bottom of the leg, where the grain is picked up by the elevating mechanism, is called the "boot". The top of the leg is called the "head". The belt with the buckets or cups attached to it passes over two pulleys: A boot pulley at the bottom of the leg, and a head pulley at the top, to which the power to move the belt is ordinarily applied. The buckets as they move through the grain in the boot pick up the grain and carry it up over the head pulley and discharge the grain so that it flows from the point of discharge to its ultimate destination. The entire mechanism is enclosed in a casing to prevent spillage, dust and chaff from escaping. It is obvious that the shape and size of the buckets and their spacing upon the belt and the speed at which the belt is operated will affect the capacity of the leg, and that capacity is the important consideration in elevating grain.

The art of constructing elevator buckets is old. In 1864 a patent for an "improvement in the manufacture of elevator-buckets" was granted to Nimbs. From that time until the early part of 1919, some thirteen other patents for improvements in the art were granted. From 1919 until the alleged invention disclosed by the patent in suit, there was little or no advance in the art. At the time the patent in suit was applied for, there were a number of different types of elevator buckets in general use: The Rialto, the Buffalo, the Minneapolis V, the Empire, the Salem, and the D. P. or O. K. None of these buckets approached perfection. Some were difficult to fasten securely to the belt; some would not fill to capacity; some would spill part of the grain before it had passed over the head pulley, causing what is known as "back-legging", which means that the grain would return to the boot and would have to be re-elevated; some of the buckets could not be spaced in close proximity on the belt; some discharged the grain in a mass; others did not discharge cleanly. Most of them had to be run at an exact speed in order to operate efficiently. There was a considerable variation in the capacity of elevator legs, the belts of which carried different types of buckets. Apparently the most efficient were the D. P. or O. K., the Salem, and the Buffalo. It was recognized that there was room for improvement in the art. What the grain elevator trade wanted was a type of bucket capable of secure attachment to the belt, and of such shape and size that the buckets could be closely spaced upon the belt, would fill quickly and to capacity, would not "back-leg", would discharge their loads evenly and cleanly, were capable of being operated at a wide range of speeds, would, so far as possible, produce an even flow of grain as they discharged, and would increase materially the elevating capacity of the leg.

In 1931, Blaine B. Gemeny, who was skilled in the art and familiar with the need for a more efficient elevator bucket, made a study and analysis of every bucket on the market. He developed a type which he thought would be a distinct advance over the prior art. He made a model elevator leg equipped with buckets of his design. These buckets had curved bottoms. He wished to interest someone in developing the bucket he had originated. He went to Burt L. Weller, who was also skilled in the art, and showed him the model. Weller was interested, but suggested that, instead of using a curve for the bottom of the bucket, a segment of a logarithmic spiral be used. Weller had used such spirals in making elevator equipment and had once assisted in increasing the speed of a race track by changing its curves into segments of logarithmic spirals. Weller's idea was adopted. The Gemeny-Weller bucket was named "Calumet" in October, 1931. An application for a patent was filed July 22, 1932. The Patent Office was skeptical as to there being any invention in what Gemeny and Weller disclosed in their application, but they finally secured the allowance of two claims, which read as follows:

"1. In an elevator mechanism, in combination, an endless carrier, a pulley over which the upper end of the conveyor is trained, a plurality of buckets secured in close proximity to each other on said car-

rier, said buckets having bottoms defining a segment of a logarithmic spiral, a casing head in said elevator in spaced relation from said pulley, said casing head being curved to present an inside surface in close proximity with the ascending buckets which surface gradually slopes away from the buckets as they travel around the pulley, said buckets discharging material in increments by centrifugal force into the casing head as they pass around said pulley, whereby said material slides around the casing head to discharge in a constant even flow.

"2. An elevator bucket for an endless chain elevator adapted to eject material therefrom after the chain reaches the upper limit of its vertical travel, comprising a container with an inwardly curved back wall adapted to be secured to the endless chain and conform with the periphery of the pulleys around which the chain is trained, a bottom wall curved outwardly to conform to the curvature of a segment of a logarithmic spiral, and side walls extending above the full load plane of the bucket to form side flaps, the upper edges of which conform to the curvature of a section of a hyperbolic spiral."

In 1932, Burt I. Weller and the Weller Metal Products Company were engaged in the sheet metal business in Hammond, Indiana. They had been doing sheet metal work for the George W. Moore Co., which specialized in selling elevator buckets and screw conveyors. The Moore Company was absorbed by another concern, and two of its executive officers, Maas and Kozak, had lost their positions. They were then on friendly terms with Weller. They decided to form a corporation to carry on the business formerly engaged in by the Moore Company, and in October, 1932, they organized the Screw Conveyor Corporation and leased from Weller a part of his plant in Hammond, Indiana, for the period of ten years, with an option to purchase. This arrangement was apparently mutually satisfactory, since it enabled the Screw Conveyor Corporation to procure from Weller and his company the sheet metal work necessary for the conduct of its business, and furnished Weller with a customer. Weller and his company were making and marketing the Calumet bucket (covered by the patent in suit), and the Screw Conveyor Corporation purchased Calumet buckets from Weller and listed them in its catalogue as "Calumet" buckets. It also called

its other products "Calumet Products". In 1937, after Maas and Kozak had been unsuccessful in procuring from Weller an agreement to grant the Screw Conveyor Corporation a license or a right to manufacture Calumet buckets, they filed, on behalf of the Screw Conveyor Corporation, a certificate of registration of the trademark "Calumet" as applied to all of their products, including elevator buckets. They finally advised Weller that they had consulted counsel, who had informed them that the patent covering the Calumet bucket was invalid. They stated to him that they proposed to make and sell the bucket without his consent, which they then proceeded to do. The result was that thereafter there were upon the market identical elevator buckets known to the trade as Calumet buckets, some of which were made by the Screw Conveyor Corporation and others by the Weller Metal Products Company, and out of that situation grew this litigation.

Upon the trial, the evidence of the plaintiffs tended to prove that Gemeny and Weller had made a distinct new and useful contribution to the art, which had resulted in greatly increasing the capacity of elevator legs, had solved an old problem, and had met with commercial success; that Weller was the co-inventor of the patented device and the sole owner of the patent; that the Weller Metal Products Company was the sole licensee; that the trade name "Calumet" as applied to the patented bucket was first used by the plaintiffs and belonged to them; and that the defendants were infringers of the patent, and were using the name "Calumet" on elevator buckets, made and sold by them, in violation of the plaintiffs' rights and to the confusion of the trade.

The evidence of the defendants tended to show that what Gemeny and Weller devised did not constitute invention; that their patent was invalid for insufficiency of description and indefiniteness of claims; that there was no infringement; and that the defendant Screw Conveyor Corporation was the first user of the name "Calumet" as applied to elevator buckets.

The findings of the court below may be summarized as follows:

That Gemeny and Weller were the joint inventors of the patented device; that this device was unknown to the prior art, had produced results not obtained with any bucket shown by the prior art, had solved a long-standing problem, and constituted a

distinct advance over anything known in the prior art; that, reading the specification of the patent in the light of the drawings, one skilled in the art could obtain the information necessary to practice the invention; that the claims of the patent, interpreted in the light of the specification and drawings, defined the invention with sufficient certainty; that the Screw Conveyor Corporation had manufactured and sold, and the Strong-Scott Manufacturing Company had dealt in, buckets identical with those manufactured and sold by the plaintiffs and substantially the same as the buckets illustrated in the drawings of the patent and covered by its claims; that plaintiffs first used the name "Calumet" for elevator cups or buckets, developed the business of making and selling the patented buckets as "Calumet" buckets, had first advertised them as such, and had created an extensive good will in that name; that the Screw Conveyor Corporation knew that plaintiffs had named the patented bucket "Calumet", and as early as 1933 knew that plaintiffs were selling them under that name; that up to the late summer of 1937 the Screw Conveyor Corporation purchased and resold large numbers of these buckets, which it procured from plaintiffs with the name "Calumet" thereon and advertised them in its catalog, issued in the spring of 1936, as "Calumet" buckets, followed by the notation "by arrangement with owners of U. S. and foreign patents"; and that until 1937 the Screw Conveyor Corporation made no objection to plaintiffs' applying the word "Calumet" to patented buckets; that sometime in 1933 the Screw Conveyor Corporation began using on its letterheads and shipping tags the term "Calumet Products" to indicate that its products were produced in what is known as the Calumet District; that this use did not constitute a trade-mark use (as applied to elevator buckets); that the Screw Conveyor Corporation's registration certificate No. 350,-721 for the trade-mark "Calumet" as applied to elevator buckets was filed May 1, 1937, after it had determined that it would make Calumet buckets and call them by that name, and was filed for the purpose of inducing the plaintiffs to grant it a license under the patent; that the Screw Conveyor Corporation, with knowledge, stood by and waited until the Calumet bucket had become a success and after plaintiffs had built up a valuable good will and then demanded that it be granted a license or manufactur-

ing rights under the patent; that the Screw Conveyor Corporation never acquired any rights in or to the patent or to make or use the patented device or any right to use the trade-mark "Calumet" as applied to elevator buckets; that the Strong-Scott Manufacturing Company had, with notice that it was infringing the patent, purchased from the Screw Conveyor Corporation and sold large numbers of elevator buckets with the name "Calumet" upon them, made by the Screw Conveyor Corporation, and that this had caused confusion in the trade; that the allegations of the Screw Conveyor Corporation's counterclaim were not sustained by the evidence.

Upon the basis of these findings of fact, the court below concluded that the plaintiffs were entitled to the injunction and accounting which they sought, and that the Screw Conveyor Corporation was entitled to no relief under its counterclaim.

The findings of fact of the court below are not to be set aside by this Court "unless clearly erroneous." Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

An examination of the record has convinced us that the lower court's findings of fact are sustained by substantial evidence and are not erroneous. It is, of course, apparent that that court accepted the testimony for the plaintiffs as true. That testimony abundantly sustains Weller's claim that he was a joint inventor; that he and Gemeny first used the word "Calumet" as a trade-name for the elevator bucket they devised, and that the bucket has come to be known in the trade by that name. Weller's testimony also sustains the finding that he never licensed the Screw Conveyor Corporation to manufacture buckets under his patent. The testimony of Maas and Kozak in support of their claim that the Screw Conveyor Corporation had been given a right by the plaintiffs to manufacture buckets under the patent was not uncontradicted and was unconvincing. It is obvious that they waited too long before negotiating with Weller for a license and then tried to devise some method to coerce him into giving them one, and, failing in that, determined to manufacture Calumet buckets, in complete disregard of whatever rights the plaintiffs might have under the patent.

In determining whether what Gemeny and Weller accomplished consti-

tuted invention and was sufficiently described and claimed, several well established rules must be kept in mind. The issuance of a patent is prima facie evidence of both novelty and utility. When one attacks a patent, he must make good his attack with reasonable clearness. The burden of proof is upon him, and every reasonable doubt will be resolved against him. While commercial success cannot convert mechanical skill into invention, it may, in doubtful cases, constitute evidence of invention. Simplicity alone cannot be relied upon as indicating that an improvement is the result of mechanical skill rather than inventive genius. If the description in the patent is such that one skilled in the art can follow it and produce the result which the patent claims, the description is sufficiently certain. These rules are sustained by an abundance of authority, as pointed out in Donner v. Sheer Pharmacal Corporation, 8 Cir., 64 F.2d 217, 220–222.

It is probably true that the only new and useful discovery that Gemeny and Weller made was that to change the shape of the bottom of an elevator bucket from a curve to a segment of a logarithmic spiral would greatly improve its efficiency. The claims of the patent did not designate which segment of a logarithmic spiral was to be used; hence the claims standing alone were insufficient to enable one skilled in the art to practice the invention. The specification of the patent also failed to disclose which segment of the spiral was to be used; but when the specification and claims are read in connection with the drawings, one skilled in the art can, without difficulty, make a Weller-Gemeny bucket.

■ Letters patent are contracts between the United States and the patentee and should, like other contracts, be construed as a whole, not for the purpose of varying their claims, but in order to ascertain the actual intent of the parties to the contract. Tschappat v. Hinderliter Tool Co., 10 Cir., 98 F.2d 994, 998. The terms of a claim are understood to refer to and be explained by the structure set forth in the drawings and specifications. American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 6, 51 S.Ct. 328, 75 L.Ed. 801; Temco Elec. Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 330, 48 S.Ct. 170, 72 L.Ed. 298; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 432, 22 S.Ct. 698, 46 L.Ed. 968;

H. H. Robertson Co. v. Klauer Mfg. Co., 8 Cir., 98 F.2d 150, 153; American Laundry Mach. Co. v. Strike, 10 Cir., 103 F.2d 453, 457; Texas Rubber & Specialty Corp. v. D. & M. Machine Works, 5 Cir., 81 F.2d 206, 208.

The defendants produced expert testimony to the effect that the bottom of the bucket shown in the drawings corresponded more accurately to a segment of a circle and a straight line than to a segment of a logarithmic spiral. However, the expert who so testified admitted on cross-examination that an instrument exemplifying a logarithmic spiral, when applied to the drawing, fitted it approximately. That accorded with the language of the specification, which reads: "The bottom wall * * * is curved to conform substantially to a section of a logarithmic spiral and has the upper margin or end thereof deflected to form a lip * * *."

■ But if an ambiguity was created because of differences between the specification and claims and the drawings, it was the duty of the court below to resolve the ambiguity in favor of the patentees, since it is the policy of the law to preserve the substance of the patent if that is reasonably possible. Samson-United Corp. v. Sears, Roebuck & Co., 2 Cir., 103 F.2d 312, 315, and cases cited; Keystone Manufacturing Co. v. Adams, 151 U.S. 139, 144–145, 14 S.Ct. 295, 38 L.Ed. 103; McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 35 L. Ed. 800; Smith v. Snow, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L.Ed. 721.

■ The rule is that patentees are allowed much latitude in terminology, and their language will be accorded the meaning intended if it can be ascertained from the context. Zenitherm Co. v. Art Marble Co., D.C., 45 F.2d 208, 212, affirmed, 5 Cir., 56 F.2d 39; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 492–494, 23 L.Ed. 952; Howe Machine Co. v. National Needle Co., 134 U.S. 388, 394–395, 10 S.Ct. 570, 33 L.Ed. 963; Dennis v. Pitner, 7 Cir., 106 F.2d 142, 148; Westco-Chippewa Pump Co. v. Auto-Prime Pump Co., D.C., 57 F.2d 556, 559. See Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co. et al., 3 Cir., 64 F.2d 185. In Westco-Chippewa Pump Co. v. Auto-Prime Pump Co., supra, the claims of the patent there in suit called for a rotor "provided with a series of buckets therein each having a

substantially flat bottom inclining from the periphery to the side thereof at a point adjacent the said annular partition and separated by transverse blades." [57 F.2d 558.] The question for determination was how nearly flat the bottoms were intended to be. In disposing of this question, the court said (page 559 of 57 F.2d): "Where, as appears to be true in this case, the patentee does not intend a flat bottom, the expression used is not happy. The language of the specification does not cover the point, and from it no one can say how near flat the bottoms of the buckets were intended to be. But the drawings, which are part of the specifications (Lamb Knit Goods Co. v. Lamb Glove & Mitten Co. [6 Cir.], 120 F. 267–269) clear up the ambiguity. Fig. 2 shows a slightly concave bottom. The patentee could select his own language, but was bound to make his meaning reasonably plain and specific. Taking the drawing into account, I think he has done so. He shows that by 'substantially flat' he meant a slight departure from flatness by concavity, and neither a convex nor corrugated surface."

The patent in suit clearly discloses that the patentees did not intend that their bucket should have a flat bottom or a curved bottom with tangent lip, but that the bottom should have a flowing or graduated curve conforming substantially to a segment of a logarithmic spiral as illustrated in the drawing.

It is to be noted that no one skilled in the art testified that there would be any difficulty in producing the kind of bucket disclosed by the patent. Compare Donner v. Sheer Pharmacal Corporation, 8 Cir., 64 F.2d 217, 220, 221.

■ The court below was justified in finding as a fact that the patent was not fatally defective in its disclosure of the invention claimed.

■ The defendants contend, however, that what the patent disclosed did not constitute invention. That presented a question of fact to be determined by the court below (Keyes v. Grant, 118 U.S. 25, 36, 6 S.Ct. 974, 30 L.Ed. 54; Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 45 S.Ct. 533, 68 L.Ed. 1098; Wire Tie Mach. Co. v. Pacific Box Corp., 9 Cir., 102 F.2d 543), and its determination in that regard will not be set aside unless clearly erroneous. Tyng v. Grinnell, 92 U.S. 467,

23 L.Ed. 733; Wright-Blodgett Co. v. United States, 236 U.S. 397, 402, 35 S.Ct. 339, 59 L.Ed. 637; Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 44 S. Ct. 533, 68 L.Ed. 1098.

■ There is abundant evidence that the Calumet bucket which Gemeny and Weller devised was an outstanding success and that in many instances where Calumet buckets were used to replace the buckets of the prior art, the capacity of elevator legs was doubled. While Kozak and Maas profess to think little of the merits of the Calumet bucket over prior art buckets, their effort to keep on making and marketing the Calumet bucket as theirs is the sincerest tribute which they could pay to the patentees. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 441, 31 S.Ct. 444, 55 L.Ed. 527; Trico Products Corporation v. Ace Products Corporation, D.C., 30 F.2d 688, 691. That the Gemeny and Weller improvement over the prior art was a simple one does not disprove invention. Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, 221–222, and cases cited; Jensen-Salsbery Laboratories v. Salt Lake Stamp Co., 8 Cir., 28 F.2d 99, 101; Temco Electric Motor Co. v. Apco Mfg. Co. 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Paramount Publix Corp. v. Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997; Smith v. Snow, 294 U.S. 1, 6, 55 S.Ct. 279, 79 L. Ed. 721.

■ We think that the finding of the court below that the Gemeny-Weller improvement involved invention was a permissible conclusion and should not be set aside under the circumstances disclosed by the evidence.

■ It seems unnecessary to determine whether claim 1, the combination claim of the patent, does or does not disclose a patentable combination. It is, of course, apparent that an elevator leg which did not include the Calumet bucket could not constitute infringement of claim 1, since that bucket was the only new element in the combination. The evidence clearly indicates that the accused buckets made by the Screw Conveyor Corporation and sold by it and by its codefendant were Calumet buckets and were substantially identical with the bucket described in the patent and covered by claim 2. That being true,.

even though the combination claim was invalid as disclosing merely an aggregation of old elements, that would not change the result in this case.

The decree appealed from is affirmed.