**BABSON BROS. CO. et al. v. PERFECTION MFG. CORPORATION.**

Civ. A. No. 2732.

United States District Court
D. Minnesota, Fourth Division.

Sept. 22, 1949.

Merchant & Merchant, Minneapolis, Minn., for defendant.

JOYCE, District Judge.

This is an action for infringment of McCornack patent No. 1,859,213 which was granted May 17, 1932 upon an application filed November 22, 1923. The patent relates to an "Improvement in Apparatus for Milking", and more particularly to a suspended type milking machine.

Plaintiffs in the action are Babson Bros. Company, suing as exclusive licensee under the patent in suit and manufacturers of the "Surge" milker embodying the elements of said patent, and Flora E. Flynn and Homer W. Wright, as successor trustees to Herbert McCornack, owners of the bare legal title to the patent. Defendant is the Perfection Manufacturing Corp. which has, since April or May of 1948, manufactured and sold an allegedly infringing suspended milker called the Perfection Model 12 Milker.

Plaintiffs charge that the following Claims of McCornack patent No. 1,859,213 have been infringed by defendant's Perfection Model 12 Milker:

Claim 4. In a milking machine of the character described, the combination with a milk receiving bucket carrying teat cups, of means for pivotally suspending the bucket from the cow's back in front of the udder and at a point above the center of gravity of the bucket and nearer the head of the cow than the center of gravity of the bucket when the teat cups are attached to the cow's teats, whereby the weight of the bucket will be caused to exert a downward and forward pull on the teats during the milking operation, but the bucket will not be caused to capsize if detached from the teats.

Claim 5. In a milking machine of the character described, the combination with a milk receiving bucket carrying teat cups, of means for suspending the bucket from the cow's back at a point nearer the head of the cow than the center of gravity of the bucket when the teat cups are attached to the cow's teats, whereby the weight of the bucket will be caused to exert a pull

Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., and Williamson & Williamson, Minneapolis, Minn., for plaintiffs.

on the teats during the milking operation, said suspending means being constructed to yield and swing forward under the increasing weight of the milk which accumulates in the bucket during milking so as to increase the pull upon the teats, and flexible tension tubes transmitting the pull from the bucket to the teats.

Claim 6. In a milking machine of the character described, the combination of a milk receiving bucket, means for pivotally suspending the same under the cow in advance of the cow's udder, teat cups connected to the bucket, the connections between the teat cups and the bucket being flexible and of such length that when the cups are attached to the teats the bucket is swung upwardly and rearwardly from the normal freely hanging position which it would otherwise occupy when the suspending means is in operative position, and means for inducing forward and rearward swinging movement of the bucket toward and from the udder during milking.

Claim 7. In a milking machine of the character described, the combination of a milk receiving bucket, means for suspending the bucket beneath the cow in such manner that it is free to swing longitudinally of the cow, double chambered teat cups connected to the bucket, means for evacuating the bucket, and means for producing pulsations in the outer teat cup chambers, the connections between the teat cups and the bucket being flexible and of such length that when the teat cups are applied to the cow's teats the bucket is swung rearward from the normal pendulous position which it would otherwise occupy when the suspending means is in operative position so as to exert a pull upon the teats.

Claim 13. In a milking machine of the class described, the combination of a milk receiving bucket, means for suspending the same beneath the cow, means to evacuate the bucket, teat cups flexibly connected to the bucket and arranged to transmit the weight of the bucket to the teats, communicating passages between the teat cups and the bucket, and means in each passage to automatically shut off the vacuum to the connected teat cup if the cup comes off the teat.

Claim 16. In a milking machine of the character described, the combination of suspending means and a milk receiving bucket adapted to be supported thereby beneath the cow's body, said bucket having an opening in the top thereof closed by a lid, and having a handle fixed on the bucket independently of the lid and extending longitudinally above the bucket from the side opposite the lid to a point above the center of mass of the bucket, by which the bucket may be carried and poured, said handle and suspending means having interengaging members for hooking the bucket on the suspending means with freedom for fore and aft swinging.

Claim 19. In a milking machine of the character described, a milk receiving bucket, means for suspending the bucket beneath the cow, teat cups comprising teat cup shells and inflations removably mounted in said shells, said inflations having integral flexible tube portions detachably connected directly with said bucket and discharging the milk directly thereinto, means for evacuating the bucket, and means for producing pulsations in the teat cup shells.

Claim 23. In a milking machine of the class described, the combination of a milk receiving bucket, means for suspending the bucket beneath the cow's body, double chambered teat cups including shells, and inflations of flexible material in the shells, and short, flexible tension milk tubes integral with the inflations and forming a direct connection between the teat cups and the bucket, and distributing a portion of the weight of the bucket to the teats, in such manner that the teats are subjected to a tugging action.

Defendant contends that all of the foregoing Claims are invalid as anticipated by or as not amounting to invention over the perior art of record. It further contends that Claims 4, 5, 6, 7, and 23 are invalid as functional and incomplete. Finally, defendant denies infringement of Claims 4, 5, 6, 7, and 23.

In order to properly evaluate McCornack's contribution to the art of machine milking, it is necessary to briefly review

prior developments in the field. In general, milking machines have been one of two types. In the "long-tube" or "floor" type milker, the milk receiving bucket is placed on the floor beside or near the cow, and from the bucket a tube extends to a "claw" or 4-branch connector beneath the cow, to which "claw" or connector the teat cups are attached by means of tubes. In the type of milking machine with which we are here concerned, the milk receiving bucket is suspended from the cow's back by means of one or more straps and the teat cups are attached to the bucket by tubes. Many machines of the latter type had been patented prior to McCormack's application for the patent in suit. These machines used one of three means for withdrawing the milk from the cow's udder. Two of these means, the "catheter" milker in which small tubes were inserted in the teats thereby causing the milk to drain from the udder and the "mechanical squeeze" milker which applied pressure to the outside of a cow's teat in an effort to effect a squeeze similar to that used in hand milking, proved impracticable and failed commercially. Early machines using the third means applied a vacuum to the teat thereby causing the bottom of the teat canal to open and the milk to be drawn off. The use of vacuum was further developed in double-acting milkers which not only applied a steady vacuum through the milk tube on the end of the teat, but at the same time acted through a pulsator and vacuum tube to apply vacuum intermittently around the outside of a flexible member within the teat cup so as to alternately squeeze and release the teat. Suspended milkers had used all three means of withdrawing the milk from the udder before McCornack claimed any invention. Furthermore, all suspended milkers have necessarily had certain elements in common, namely, a means of suspension, a milk receiving bucket, teat cups, and milk tubes connecting the teat cups to the bucket. In the prior art, one or more straps were used to suspend the milk receiving bucket or the teat cups or both from the cow's back. Earlier patentees of suspended milkers saw two advantages over "floor" type machines.

Thus, it was early recognized that if a milk receiving bucket bearing teat cups was suspended from the cow's back, the milking apparatus would follow the movements of the cow and the teat cups would not become detached from the teats. Another advantage claimed in the prior art arose from the fact that a suspending means could be used to hold the teat cups up toward the teats and thereby minimize the possibility of the cups becoming detached. At the time McCornack filed his application no suspended milkers were being manufactured for, or sold on, the domestic market.

There is another factor to be considered before McCornack's contribution to the art can be accurately measured, and that relates to the anatomy of a cow's udder. Expert testimony established certain facts with respect thereto which the court considers important in the present inquiry. Milk from the secreting tissue of the gland or udder of a cow accumulates in the ducts of the udder. The primary ducts extend from the upper portions of the udder in a general downward and forward direction to the cisterns of the udder and teats. From the primary ducts, smaller ducts extend laterally in all directions. On most cows the teats have a forward tilt which approximates the angle of descent of the primary ducts. A forward and downward tug and pull upon the teats during the milking operation is most effective in securing a flow of milk towards the teats. Particularly is this true during the later stages of the milking operation when the milk sought to be obtained lies in the upper and rearward portion of the udder. A tug and pull upon the teats which is exerted either straight down or straight forward does not accomplish the desired result. The effect of either action is to constrict the opening through which the lateral ducts empty into the primary ducts and thereby retard the flow of milk toward the floor of the udder. In a milking machine which does not exert a strong, downward and forward tug and pull on the teats during the late stages of the milking operation, it is necessary for the operator to supply this action manually.

The patent in suit relates to a suspended type milking machine. It calls for a milk receiving bucket upon the lid of which are mounted short, flexible milk tubes and teat cup assemblies. The latter consist of a metal shell inside which is a flexible member called an inflation. The milk tubes are attached to the bucket by nipples which are mounted on the bucket lid and which are provided with means for automatically shutting off the flow of vacuum when the cups become detached from the teats. A surcingle extends over the cow's back and the two ends thereof engage a resilient bow. The milk receiving bucket is pivotally suspended from the bow in such manner as to provide a downward tilt to the side of the bucket bearing the milk tubes and teat cups. The flexible milk tubes are of such length and the surcingle is so positioned on the cow's back that when the teat cups are attached to the teats the bucket is swung upwardly and rearwardly from its normal pendulous position. As a result of this suspension arrangement and acting in conjunction with the double action teat cups and pulsator, an intermittent, downward and forward tug and pull is exerted on the cow's teats during the milking operation. Since the weight of the bucket increases as milk accumulates in it, the tug and pull exerted on the teats increases as milking progresses.

The "Surge" Milker which plaintiff Babson Bros. Co. manufactured under the McCornack patent proved a commercial success. Except for a machine manufactured by Universal Milking Machine Co. since 1941 under a sub-license, the "Surge" Milker was the only suspended type milker on the market. This condition continued until defendant started selling its Perfection Model 12 Milker about one year before the McCornack patent expired.

The law provides that "Any person who has invented or discovered any new and useful * * * machine * * * or any new and useful improvements thereof * * * not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, * * * may * * * obtain a patent." R.S. § 4886 (1897 Amendment), 35 U.S.C.A. § 31.

Viewing the milking machine disclosed by the McCornack patent No. 1,859,213 in the light of the teachings of the prior art of record, there can be no question as to McCornack's having made an important contribution to, and advance in, the art of machine milking. For aught that appears, he was the first to conceive of the practicability, or even desirability, of exerting a downward and forward tug and pull upon the cow's teats. Without question, he was the first to teach an arrangement of the elements comprising a suspended type milking machine so as to accomplish this result. In so doing, he disclosed a milking machine which was not only more efficient in operation but was also capable of doing automatically what had theretofore been done by hand, namely, "stripping" the cow.

If the question of invention be deemed close, and this court does not consider it to be so, then reference may properly be made to the commercial success enjoyed by the "Surge" Milker. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721, and see Jungerson v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269.

The question of invention is resolved in favor of the patentee while bearing in mind this Circuit's recognition of the raised standards of originality necessary to sustain a patent. Alemite Company v. Jiffy Lubricator Company, 8 Cir., 1949, 176 F.2d 444; Koochook Co., Inc., v. Barrett, 8 Cir., 158 F.2d 463, 466–467.

The milking machine disclosed by the McCornack patent is made up of a number of features or elements which in combination the court finds amount to invention. However, such finding leaves unanswered the question of validity of the several claims by which the inventor attempted to set forth each allegedly novel feature in combination with elements old in the art so as to define his invention, for in setting

forth separate features of the machine in separate claims McCornack has exposed himself to the defense of anticipation or of lack of invention as to particular claims.

"Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, * * * and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery * * *." R. S. § 4888, 35 U.S.C.A. § 33. Whether each of the several claims of McCornack's patent discloses invention while meeting the requirements of this statute must next be determined.

### Validity of Patent

■ The patent in suit is, of course, presumed valid, and the burden rests upon defendant to establish by clear and satisfactory proof that the patent is void. Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389; Wisconsin Alumni Research Foundation v. George A. Breon & Co., Inc., 8 Cir., 85 F.2d 166; Hall Laboratories v. Economical Laboratory, D.C. Minn., 72 F.Supp. 683. The validity of the several claims will be separately considered.

### Claim 4.

■ This claim relates to a suspension arrangement which is designed and intended to give a downward and forward pull on the teats during the milking operation and in which the suspending means becomes a vital element in the functioning of the milker. The principal prior art relied upon by defendant to show anticipation or lack of invention are the Omega Milker (Lindstrom Nos. 1,045,991–1,103,974–1,210,818), the

Manus Milker (Jonsson Nos. 1,363,739–1,190,294), Hoover & Jay No. 474,830, Norby No. 636,446, and Murchland Nos. 473,770 and 501,804. However, none of the patents cited, either in their claims, specifications or drawings, calls for the arrangement of elements disclosed by Claim 4. There is nothing to indicate that any of the patentees perceived the advantages of such an arrangement, and certainly it does not appear that any of them intended to give a downward and forward pull on the teats. However, it is defendant's position that by rearranging the component parts of each of the cited patents, the machines disclosed therein can be made to perform the same function as called for in Claim 4, and that, therefore, these patents anticipate the claim or at least prevent the latter from amounting to invention. I do not understand the test of invention to be that urged by defendant. In Bianchi v. Barili, 9 Cir., 168 F.2d 793, 796, the court held:

"It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions." This language seems appropriate here. And cf. Telephone Cases (Dolbear v. American Bell Telephone Co.), 126 U.S. 1, 539, 8 S.Ct. 778, 31 L.Ed. 863, and Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 66–67, 43 S.Ct. 322, 67 L.Ed. 523.

■ It should be noted that two of the patents cited as prior art, Lindstrom No. 1,210,818 and Jonsson No. 1,190,294, were considered by the Patent Office Examiner during the prosecution of McCornack's application. Inasmuch as these patents were representative of all those cited by defendant, the foregoing fact would tend to strengthen the initial presumption in favor of the validity of the patent in suit. Bianchi v. Barili, supra, 168 F.2d at page 796; Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 149 F.2d 962.

■ Defendant further contends that Claim 4 is functional and therefore invalid. Numerous authorities have been cited for the proposition that claims which are func-

tional in their entirety or at the exact point of novelty must be held invalid. This court accepts this proposition as firmly established. However, acceptance of the foregoing proposition leaves undetermined its applicability to the claim in question.

With respect to Claim 4, defendant finds the novelty, if any, in the third clause which reads, "of means for pivotally suspending the bucket from the cow's back in front of the udder and at a point above the center of gravity of the bucket and nearer the head of the cow than the center of gravity of the bucket when the teat cups are attached to the cow's teats". The argument is made that this clause is a "means" clause, is broad enough to comprehend all means by which the results set forth in clauses 4 and 5 of Claim 4 may be obtained, and thus must be held invalid. In effect, defendant asks the court to read this claim as providing for "means for pivotally suspending the bucket from the cow's back * * * whereby the weight of the bucket will be caused to exert a downward and forward pull on the teats during the milking operation." Thus stated the claim would be invalid, but to accept this construction would be to ignore the language in the third clause of the claim wherein McCornack describes the novel arrangement by which he accomplished the stated results. Defendant concedes that an element old in the art may be set forth in functional language and McCornack does this when he says "means for pivotally suspending the bucket from the cow's back." But he then proceeds to set forth the manner in which this element is to be arranged with other elements so as to secure the desired result. Defendant has relied upon certain language used by the Supreme Court in Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 10, 91 L.Ed. 3, to show that Claim 4 is invalid as functional. There the court said:

"The language of the claims thus describes this most crucial element in the 'new' combination in terms of what it will do rather than in terms of its own physical characteristics or its arrangement in the new combination apparatus."

Taking the third clause of Claim 4 in its entirety, I believe it clear that McCornack has brought himself within the language of the last portion of the quotation, and that he has, in fact, described the most crucial element of the new combination in terms of "its arrangement in the new combination apparatus."

Therefore, Claim 4 is held valid as against the defense that it is functional.

Defendant also asserts the invalidity of Claim 4 as incomplete "in that it took a cow or statute [sic] of a cow, plus certain manipulations of the farmer to make the claims complete." It is true that the patent in suit did not comprehend a cow or statue thereof, and it is equally true that McCornack necessarily left to the operator the positioning of the machine on a cow. But certainly that is not fatal to his claim. He has set forth "the manner and process of making, constructing, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science * * * to make, construct, * * * and use the same"; he has explained "the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions"; and he has pointed out and distinctly claimed "the part, improvement, or combination which he claims as his invention or discovery". The law does not require more. Defendant has cited Ex parte Jones, Jones and Werner, 353 O.G. 4, 1926 C.D. 100, in support of its position. Without more facts as to the proceedings then before the Commissioner of Patents than this court has available, it is not possible to construe with accuracy the language used. Suffice it to say, if the case stands for the proposition for which it is now cited, namely, that a cow and the manual acts of a farmer are necessary to make Claim 4 complete, this court refuses to concur in the proposition.

Claim 4 is in all respects found valid.

### Claim 5.

In urging the defense of anticipation and lack of invention to Claim 5, defendant relies principally upon three of the patents, Murchland Nos. 473,770 and 501,804 and

Hoover & Jay No. 474,830, cited against Claim 4. The same basic arguments are made with respect to Claim 5 as were made in Claim 4, and for the same reasons as heretofore expressed by the court are found to be without merit.

With respect to the defense that Claim 5 is functional and incomplete, defendant advances the same arguments as were advanced against Claim 4, and for the same reasons they are found to be unsound.

However, it should be noted that I do not agree with defendant that the "alleged point of novelty" in this claim is to be found solely in the third clause thereof which clause provides for a "means for suspending the bucket from the cow's back at a point nearer the head of the cow than the center of gravity of the bucket when the teat cups are attached to the cow's teats". I also find novelty in the fifth and sixth clauses of this claim which clauses provide: "said suspending means being constructed to yield and swing forward under the increasing weight of the milk which accumulates in the bucket during milking so as to increase the pull upon the teats, and flexible tension tubes transmitting the pull from the bucket to the teats." I fail to find any of these elements, either alone or in combination, in the prior art of record.

### Claim 6.

Defendant purports to find everything called for in Claim 6 in Murchland No. 473,770 except the "means for producing forward and rearward swinging movement of the bucket" and aserts that this "means" can be supplied by substituting the double-chambered teat cups of Hulbert No. 1,089,838 or Leitch No. 1,249,134 for the single-chambered teat cups of the Murchland patent. Defendant then argues "that this is only the putting together of commercially available structures to obtain an inevitable and entirely foreseeable result". This argument appears unsound in two respects.

In the first place, it does not appear that Murchland either had or appreciated the advantages of having "the connections between the teat cups and the bucket being flexible and of such length that when the cups are attached to the teats the bucket is swung upwardly and rearwardly from the normal freely hanging position which it would otherwise occupy when the suspending means is in operating position". Neither the claims, specifications nor drawings of Murchland No. 473,770 indicate that the bucket was to be swung upwardly and rearwardly from its normal freely hanging position. If the patent indicates anything in this respect, it is to be found in Figure 2 of the drawings. As there portrayed, there is an appreciable sag in the milk tubes between the teat cups and bucket so as to preclude any possibility of the bucket being swung upwardly and rearwardly from its normal freely hanging position.

Secondly, the result of combining "means for inducing forward and rearward swinging movements of the bucket toward and from the udder during milking" (double-chambered teat cups according to defendant) with the other elements called for in Claim 6, would be the application of an intermittent and increasing tug and pull upon the teats exerted in a downward and forward direction. That this was not an "inevitable and entirely foreseeable result" when double-chambered teat cups are installed on Murchland No. 473,770 is made apparent by reference to two other suspended milkers. Both the Omega and Manus milkers upon which defendant has relied used double-chambered teat cups on suspended milkers essentially the same as Murchland's. Neither attained the results of Claim 6, and both had disappeared from the domestic market when McCornack filed his application.

I find, therefore, that Claim 6 discloses patentable invention. Defendant also asserts that Claim 6 is functional and incomplete, but does not present any argument with respect thereto. However, the court assumes it to be the defendant's position that the same reasons apply for finding Claim 6 invalid on these grounds as were urged with respect to Claim 4. Thus, for the same reasons set forth under the discussion of Claim 4, I find that Claim 6 is neither functional nor incomplete.

### Claim 7.

Defendant contends that all of the defenses set forth with respect to Claim 6 apply with equal force to Claim 7. I fail to

find the combination of elements called for by this claim in the prior art of record, and I believe the machine disclosed amounts to invention. The claim is neither functional nor incomplete.

### Claim 13.

According to defendant all of the elements going to make up the combination called for in this claim are to be found in the patents to Murchland, Norby, and Hoover & Jay previously referred to except the "means in each passage to automatically shut off the vacuum" and this element is found in the prior art patents to Cockburn No. 1,155,131 and Dinesen No. 1,371,355. If the language quoted above from Claim 13 was the only point of novelty in this combination claim, I would agree with defendant that it was not sufficient to show invention. But, I do not believe it is the only novel element in the new combination. In no prior art patent, including those of Hoover & Jay, Norby and Murchland, do I find "teat cups flexibly connected to the bucket and arranged to transmit the weight of the bucket to the teats". This is an important element in McCornack's concept of the machine milking, and I believe its incorporation in the combination apparatus set forth in Claim 13 was invention.

### Claim 16.

This claim brings into combination with other parts of the milking machine "a handle fixed on the bucket independently of the lid and extending longitudinally above the bucket from the side opposite the lid to a point above the center of the mass of the bucket, by which the bucket may be carried and poured, said handle and suspending means having interengaging members for hooking the bucket on the suspending means with freedom for fore and aft swinging." Defendant relies principally upon Lindstrom No. 1,210,818 and Ripley No. 41,095 to show that Claim 16 is invalid in the light of the prior art. The Ripley patent relates to a handle designed to give greater convenience and ease in lifting and carrying about a culinary vessel. In form or shape it is the same as one of three types of handles contemplated by McCornack, but the shape of the handle was not important in the McCornack concept as is evident from his providing for three types of handles. The important feature lay in the arrangement of the handle with the bucket and the suspending means. The Ripley patent disclosed nothing with respect to the latter and would not negative invention.

The Lindstrom patent discloses "a handle fixed on the bucket independently of the lid and extending longitudinally above the bucket from the side opposite the lid to a point above the center of the mass of the bucket, by which the bucket may be carried and poured". However, it does not appear that this handle was designed or used to engage the suspending means with freedom for fore and aft swinging. Defendant contends that "there is no reasonable alternative for one skilled in the milker art (with the Lindstrom disclosure before him) than to place a strap or rope or other suspending means through the handle". Such a statement is shown to be completely unfounded when consideration is given the Omega Milker which embodies the elements of the Lindstrom patent. The manufacturers of the Omega Milker found a reasonable alternative by using four hooks on the bucket to engage the suspending means, an arrangement which did not give freedom for fore and aft swinging.

Similarly, in the Manus Milker it is apparent that the handle and the suspending means were not designed or used to provide freedom for fore and aft swinging. Such a result was neither vital nor desired in prior patents relating to suspended milkers. It was a vital element in McCornack's new concept of machine milking, and bringing it into combination with the other elements of Claim 16 amounted to invention.

### Claim 19.

The novelty, if any, in this claim must be found in the fourth and fifth clauses thereof which provide for "teat cups comprising teat cup shells and inflations removably mounted in said shells, said inflations having integral flexible tube portions detachably connected directly with said bucket and discharging the milk di-

rectly thereinto". McCornack was not the first to use teat cups comprising teat cup shells and inflations on suspended milkers as may be noted by reference to the Manus and Omega milkers previously discussed. Nor was he the first patentee of a suspended milker who had milk tubes detachably connected directly with the bucket and discharging the milk directly thereinto, as is apparent when reference is made to the Hoover & Jay and Murchland patents. The only novelty in the combination called for in Claim 19 lies in combining the inflation and milk tube into a single unit and in having the inflation removably mounted in the teat cup shells. Even these latter elements are found in the prior art patents of Hulbert No. 1,089,838 and Leitch No. 1,249,134 which relate to teat cup assemblies. I do not believe that adding the improvements taught by Hulbert and Leitch to a suspended milker constituted invention. Plaintiffs' contention that the direct connection between each teat cup and the bucket is a vital element in McCornack's patent is undoubtedly true, but the important point is that this element or arrangement is found in earlier patents relating to suspended milkers. All of the elements combined in Claim 19 are found in the prior art and there perform precisely the same function as in Claim 19. Therefore, Claim 19 is held to be invalid as not amounting to invention over the prior art.

### Claim 23.

This claim provides for "short, flexible tension milk tubes integral with the inflations and forming a direct connection between the teat cups and the bucket, and distributing a portion of the weight of the bucket to the teats, in such manner that the teats are subjected to a tugging action" in combination with other elements old in the art. Defendant relies principally upon the Murchland patent plus the double-chambered teat cups of Hulbert and Leitch to show lack of invention over the prior art. I fail to find short, flexible milk tubes distributing a portion of the weight of the bucket to the teats in such manner that the teats are subjected to a tugging action either in the Murchland patent or in any other prior art cited by defendant. Adding this feature to the other elements called for in Claim 23 amounted to invention.

However, assuming invention, defendant contends that the use of the adjective "short" in describing the milk tubes makes Claim 23 indefinite, and also, that the necessity of acts by a farmer to make the machine disclosed operable makes the claim incomplete. The latter attack is predicated upon the same reasoning as that urged with respect to the invalidity of Claim 4, and for the same reasons as there set forth is found to be unsound.

As to the charge of indefiniteness, defendant has cited a number of cases, United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232; Standard Oil of Calif. v. Tide Water Associated Oil Co., 3 Cir., 154 F.2d 579; Buffington's Iron Bldg. Co. v. Eustis, 8 Cir., 65 F. 804, which have emphasized the necessity of definiteness and particularity in patent claims. As a general proposition and with respect to the situations then before the courts, the statements made are undoubtedly correct. But it is also correct that "If the description in the patent is such that one skilled in the art can follow it and produce the result which the patent claims, the description is sufficiently certain", and that "The terms of a claim are understood to refer to and be explained by the structure set forth in the drawings and specifications." Strong-Scott Mfg. Co. v. Weller, supra, 112 F.2d at page 394. See, also, Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154. Reading Claim 23 in the light of the explanation found in the drawings of the patent, particularly Figure 1, there can be no question that one skilled in the art of machine milking could follow it and construct a machine producing the results claimed by the patent. The claim is not, therefore, too indefinite.

### Infringement.

All of the claims in issue, except Claim 19, having been found valid, it is necessary to determine whether defendant's Perfection Model 12 Milker infringes the claims.

The law on whether a device has infringed a patent has been set out numerous times. For example, in Sanitary Re-

frigerator Co. v. Winters, 280 U.S. 30, on page 42, 50 S.Ct. 9, on page 13, 74 L.Ed. 147, the court said:

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Again, in Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878, 881, the rule was stated as follows:

"It is settled that 'to sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained.' "

Defendant denies infringement of Claims 4, 5, 6, 7, and 23. Except as to Claim 6, these claims read as well upon defendant's Perfection Model 12 Milker as upon the "Surge" Milker which admittedly embodies the features of the McCornack patent. However, since the final positioning of its machine lies in the hands of the farmer, and since the machine may be positioned on the cow in such a manner as will not give the results called for in the McCornack patent, defendant contends that it cannot be held to infringe the several claims. I find little merit in this argument. In Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 87 F.2d 35, 38, the court said:

"It may be added that the machines either were infringing machines or not when they were sold. We held they were. If they were designed so that they could be operated normally in an infringing way, it would seem to be immaterial that some customers did not choose at times to operate them in that manner." The court, in Parson Non-Skid Co. v. Atlas Chain Co., 2 Cir., 198 F. 399, 400, expressed the same thought thus:

"When the defendant sells a device the natural, usual and preferential use of which constitutes an infringement, it is no answer to assert that it is possible, by limiting its efficiency, to use innocently."

The evidence in the present case showed that farmers owning the defendant's milker used it in the manner taught by the McCornack patent. Except for several nonessential details the defendant's machine is an exact duplicate of the Surge Milker. The two machines are alike in the result attained, in the means of attaining that result, and in the manner in which their respective parts operate and co-operate to produce that result. Thus, except as to Claim 6, I do not believe there can be doubt as to the fact of infringement.

With respect to Claim 6, the last clause thereof calls for "means for inducing forward and rearward swinging movement of the bucket toward and from the udder during milking". In the McCornack patent and the Surge Milker, this is accomplished by applying vacuum to the outer chambers of all four teat cups simultaneously. This results in a forward and rearward swinging movement of the bucket. However, in defendant's machine the vacuum is applied alternately to the outer chambers of the left teat cups and the right teat cups. The result is a side-wise swinging of the bucket. Plaintiffs claim that the action of the teat cup upon the teat is the same in defendant's milker as is called for by McCornack's patent, and with this statement I agree. But the important point is that one of the elements called for in Claim 6 is not present in the accused machine. "The principle seems to be well established that where the claims of a patent cover a plurality or combination of elements, the omission of any element avoids infringement." Edwards v. Hychex Products, 7 Cir., 171 F.2d 259. See, also, McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762. I fail to find in defendant's milker "means for inducing forward and rearward swinging movement of the bucket", and conclude that Claim 6 is not infringed.

Therefore, all of the claims in suit, except Claim 19, are found to be valid, and all, except Claim 6, are found to have

been infringed by defendant's Perfection Model 12 Milker.

In view of the above, plaintiffs are entitled to a decree. Counsel for plaintiffs will prepare and submit an appropriate decree together with findings of fact and conclusions of law in accordance with this memorandum.