**CISSELL v. CLEANERS SPECIALTIES,
Inc.**

No. 4562.

United States District Court
W. D. Missouri, W. D.

Dec. 1, 1948.

Watson, Ess, Barnett, Whittaker & Marshall, of Kansas City, Mo., and Toulmin & Toulmin, of Dayton, Ohio, for plaintiff.

Thomas E. Scofield, of Kansas City, Mo., for defendant.

RIDGE, District Judge.

Plaintiff is the owner of Letters Patent No 2,346,821 for an "Apparatus for Spotting Fabric Materials", issued April 18, 1944, on application therefor, filed June 28, 1940. The issues herein are existence of infringement and validity of plaintiff's letters patent.

In dry cleaning garments, after the garment is cleaned with commercial solvents it is necessary thereafter to remove spots and stains from the fabric of the garment. Steam of varying degrees of wetness is one means employed for that purpose. In so using steam, it is necessary to change, instantaneously, its moisture content. Plaintiff's invention provides a means for varying and instantaneously changing the moisture content of steam while the fabric of a garment is under treatment.

Three (3) claims are allowed in plaintiff's letters patent. Claim 1 is as follows:

"In apparatus for treating and cleaning fabric materials, the combination of a mixing chamber, an inlet connection to said chamber from a source of steam, an inlet connection to said chamber from a source of water, a spotting gun, an outlet connection for supplying steam from said mixing chamber to said spotting gun, a normally closed valve in each of said inlet connections, an actuating member for each valve, an operating member common to said valves, and operating connections from said operating member to said actuating members, and means in the operating connection of the water valve providing a predetermined lost-motion to effect opening of the steam valve ahead of the water valve and to permit opening and closing of the steam valve alone when said operating member is operated through distances not exceeding the lost-motion provided in the operating connection to said water valve, whereby steam of varying wetness is supplied to said gun."

Claim 2 is dependent on Claim 1, with an additional element which reads:

"Apparatus according to claim 1, wherein said lost-motion connection provides for the closing of the water valve ahead of the closing of the steam valve."

The elements of Claim 3 are identical with those of Claim 1, except "wet and dry steam * * * of required moisture content" is claimed as being supplied to the spotting gun.

The construction and operation of plaintiff's invention as revealed by his letters patent may be briefly described as follows: A steam condensing chamber is installed in a vertical position at one end of a horizontal spotting board, to which a steam supply and return line connection are made. An overflow inside said chamber is so arranged that water from steam condensation accumulates in the bottom of the steam chamber. In the upper portion of the chamber dry steam is retained. Within the head of the chamber there is a dry steam valve, and a moisture valve, which control the rate of flow of steam and moisture to a conduit intercepted by a hose connection which attaches to a spotting gun. Said valves, through co-operating attachments, are operated by a single foot pedal. By so operating one of said co-acting valves dry steam is exhausted from the upper portion of the steam chamber into the conduit above mentioned. On simultaneously opening both valves, water is discharged from the bottom of the chamber, which is atomized into said conduit and is mixed with the dry steam therein. Thus the moisture content of the steam to

the spotting gun is instantaneously increased or decreased as desired. The co-acting valves are actuated by superimposed levers, thereover. The levers are so arranged that a movement of the top one, half down, opens only the dry steam valve, while a movement of that lever completely down depresses the underneath lever that opens the moisture valve. Both such levers are actuated by a single member connected to the foot pedal. Normally, the co-acting valves remain closed. The initial movement of the foot pedal opens the steam valve. The water valve is not opened until the lost motion between the actuating levers has been taken up in their operating connection. This arrangement permits the opening and closing of the steam valve alone within the range of the lost motion connection, and by further depression of the levers the steam and water valves are simultaneously opened. Consequently, the operator of such device may instantaneously vary the wetness of steam when applied to the fabric of a garment.

The construction and operation of defendant's accused device may be thusly described. In a steam condensing chamber installed in a horizontal spotting machine, defendant incorporates, one above the other, dual valves in a single hollowed stem arrangement. The stem enclosure is so attached to the top of the condensing chamber that it has a connection to a source of dry steam from the upper portion of the condensing chamber and a connection to a source of water from the bottom thereof. Said dual valves are so arranged that from a normally closed position they are actuated by a rod that extends centrally through the hollowed stem to the upper or steam valve and by an attachment in the form of an "acorn nut" on the top of the lower or water valve. An operating member common to said valves is an arm pivoted at the top of the hollowed stem which by attachment connects to a foot pedal. A partial depression of the foot pedal actuates the arm or lever at the top of the accused device, which operation in turn actuates the rod attached to the upper or steam valve, opening the latter. By such a partial operation of the accused device the steam valve may be opened or

closed independently of the lower or water valve. The lower or water valve of the accused device is opened and closed by further depressing the foot pedal. A more complete depression of the foot pedal than above described brings the base of the upper or steam valve into contact with the "acorn nut" attached to the top side of the water valve. Such further operation actuates the "acorn nut" on the water valve and causes said valve to open, from a normally closed position. A predetermined, or lost motion, space exists between the bottom of the steam valve and the top of the "acorn nut" on the water valve. Thus, when the upper or steam valve of the accused device is opened steam alone passes through the hollowed portion of the stem surrounding the rod attached to the steam valve, from whence it is discharged through an outlet connected to a hose and spotting gun. When both valves of said device are simultaneously opened, water is combined with dry steam and is discharged into the spotting gun hose. The mixing of dry steam and water in the accused device takes place in the chamber or hollowed portion of the stem immediately above the steam valve.

For discussion of the issue of infringement, we assume validity of plaintiff's letters patent. From the above description of plaintiff's invention and the accused device it is readily observed that the result attained by operation of the two devices and the means of attaining that result are substantially the same, namely, from the two devices steam of varying and required moisture content for treating fabric material is accomplished in a unitary manner. To resolve the issue of infringement herein, it only remains to be determined whether the manner by which the several parts of the two devices operate and co-operate to produce the result so attained are substantially identical with the claims allowed in plaintiff's letters patent. In Montgomery Ward & Co. v. Clair, 8 Cir.; 123 F.2d 878, 881, it is said:

"It is settled that 'to sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that

result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained.' Electric Protection Co. v. American Bank Protection Co., 8 Cir., 184 F. 916, 923. See, also, Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L. Ed. 935; McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762, 766; Hyman v. F. W. Woolworth Co., 8 Cir., 28 F. 2d 833, 837. It is necessary therefore in determining the question of infringement to look at the mode of operation or the way the device works, together with the result and the means by which that result is attained. McKays Co. v. Penn Electric Switch Co., supra."

The evidence before us reveals that the two devices here considered are operated in single dry cleaning plants for the same identical purpose. Defendant concedes in a tabulation of comparing elements of its structure, with the claims allowed in plaintiff's letters patent that the accused device has (a) a mixing chamber where dry steam and water from a steam condensing chamber are blended; (b) an inlet connection to said mixing chamber from a source of steam; (c) an inlet connection to said chamber from a source of water; (d) a spotting gun; and, (e) an outlet connection for supplying steam from said mixing chamber to said spotting gun. It is as to the existence in defendant's device of (f) a "normally closed valve in each of (the) inlet connections" to the mixing chamber; (g) "an actuating member for each" of said valves; (h) "an operating member common to said valves"; (i) an "operating connection from said operating member to said actuating members"; and, (j) a "means in the operating connection of the water valve providing a predetermined lost motion to effect opening of the steam valve ahead of the water valve and to permit opening and closing of the steam valve alone when said operating member is operated through distance not exceeding the lost motion provided in the operating connections to said water valve," as claimed in plaintiff's letters patent and found in the description of his

invention, that determines the issue of infringement or non-infringement herein. Defendant contends that the above claims (f) and (g) are not to be read on its device; that absence of such elements from defendant's device also prohibits claims (i) and (j) from likewise being read thereon. As a consequence, defendant asserts that the several parts of its structure operate and co-operate in a fashion distinctly different from the claims of plaintiff's invention, and no infringement here exists.

■■■ There is a structural difference between defendant's device and plaintiff's invention. Infringement is not avoided on that ground if defendant's device appropriates the principle and mode of operation of plaintiff's invention. Baldwin Rubber Co. v. Paine & Williams Co., 8 Cir., 99 F.2d 1, 5. An examination of the exhibits, and cut-away structures of the two devices, reveal that they are substantially identical in their operating parts. The accused device has arranged two normally closed valves, one above the other; while plaintiff's invention has such valves set upright, but horizontally from each other, in the head of the steam condensing chamber. Both valves in the accused device have a separate actuating member. The steam valve in defendant's device is actuated by a rod which extends centrally through the hollowed stem of his structure. Immediately below the steam valve, an "acorn nut" on the top side of the water valve causes the water valve to open when the steam valve is depressed and connects therewith. Without the "acorn nut" on the top of the water valve, or some other such actuating member, the water valve of defendant's device would not operate. An operating member common to said valves is a pivoted transverse lever on the top of the hollowed stem containing the dual valves. Its movement downward by a foot pedal connection opens the steam valve first, followed by the opening of the water valve. When both valves are opened, this provides an operating connection from said operating member (the transverse lever, supra) to the actuating members of each valve in defendant's device. Defendant uses a single rod that first connects to the steam valve. Further depression of that rod and

the steam valve contacts the "acorn nut" or actuating member of the water valve. Though defendant's connections between said valves, when they are both opened is a continuous process, obtained by use of a single rod, instead of two rods as on plaintiff's invention, it is obvious that the operating members of defendant's device are equivalent to such operating members in plaintiff's invention. Seymour v. Osborne, 11 Wall. 516, 517, 560, 78 U.S. 516, 517, 560, 20 L.Ed. 33. A predetermined lost motion, or space, exists between the steam and water valve of the accused device. By this "means" the steam valve of such device is opened ahead of the water valve, and permits the opening and closing of the steam valve alone, through the distance not exceeding the lost motion so provided. The "means" in plaintiff's invention for opening the steam valve ahead of the water valve is the position of the overlying levers on the top of the steam condensing chamber and the lost motion, or space, between such levers. The structural relationship of the parts constituting the actuating members of the dual valves in defendant's device, the seating and unseating of said valves and the operating connections common to said valves and actuating members are within the range of equivalents allowable to plaintiff in protection of his invention. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

Plaintiff's invention relates to improvement in an apparatus for dispensing steam in the treatment of fabric in the art of dry cleaning garments. The claims allowed therefor by the Patent Office are a new combination of previously known elements in a novel, new and useful manner, providing a unitarily controlled method of dispensing steam of varying water content, and instantaneously changing the same in the treatment of fabrics in the dry cleaning industry. Such is the scope of plaintiff's patent. Gen. Motors Corp. v. Kesling, 8 Cir., 164 F.2d 824. Form is not of the essence thereof, hence the mathematical measurements and structural difference of plaintiff's invention compared with defendant's device is of little consequence to the issue of infringement charged. Freeman v. Altvater, 8 Cir., 66 F.2d 506. The com-

bination of claims in plaintiff's letters patent is the measure of plaintiff's invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122. Defendant's structure embodies every mechanism that is described in plaintiff's letters patent and each of the claims made therefor. If plaintiff's letters patent are valid, infringement is here present. Lourie Implement Co. v. Lenhart, et al., 8 Cir., 130 F. 122; G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F.2d 958; General Ry. Signal Co. v. Great Northern Ry. Co., 8 Cir., 43 F.2d 790; Wisconsin-Minnesota Gas & Elec. Household Appliance Co. v. Hirschy Co., 8 Cir., 28 F.2d 838.

## Validity of Patent

Defendant alleges that plaintiff's letters patent are invalid because of indefiniteness in description, and claims; that said letters patent reveal a departure from the inventive concept contained in plaintiff's initial application therefor and the claims as finally allowed by the Patent Office; and, that plaintiff's invention is not patentable because of prior art. This necessitates an examination of the file wrapper, a consideration of the prosecution of plaintiff's application through the Patent Office, and a review of the prior art to which plaintiff's invention relates.

Plaintiff's application for letters patent was originally entitled an improvement in a "Steam Humidifier," and eleven (11) claims were made therefor. The first paragraph of the specifications, in the original application, described the invention as relating "to improvements in a steam humidifier for use in connection with steam cleaning and garment treating apparatus." All the claims of the original application were rejected. Plaintiff thereupon cancelled the original eleven (11) claims and submitted four (4) new claims, and urged that his apparatus was designed for blending steam and water with a particular valve mechanism. These new claims, numbered 12 to 15, were also rejected by the Primary Examiner. Plaintiff then cancelled those claims and submitted five (5) new ones, numbered 16 to 20, inclusive. These likewise were rejected by the examiner and

such rejection made final. Responsive to such action, however, plaintiff again amended his application by changing the title thereof to "Apparatus for Spotting Fabric Materials," cancelled claims 16 to 20 and added three (3) new claims, 21, 22 and 23. These latter claims being rejected by the Primary Examiner, an appeal was taken to the Board of Examiners. On appeal, the Board reversed the decision of the Primary Examiner on said last three claims and the same were then allowed as Claims 1, 2 and 3 to the patent in suit. It is apparent that plaintiff's invention received careful consideration by the Patent Office.

Defendant's contention that there is a departure from the inventive concept revealed in plaintiff's original application and the claims of plaintiff's letters patent as allowed by the Patent Office, revolves around the existence and location of a "mixing chamber" and "normally closed valves" in plaintiff's invention. Defendant asserts that in the original application plaintiff conceived that the blending of steam and water in his invention occurred in the hose leading to the spotting gun. Defendant says this is borne out not only in the specifications but also by the language of the original claims submitted in the original application.

 An examination of the file wrapper, and letters patent as published, reveal that the drawing of his invention, as originally submitted by plaintiff, was the only drawing that was ever considered by the Patent Office. In the specifications of his invention set forth in the original application and in said drawing, a conduit connecting with the steam and water valves is described and designated with the numeral 20. On page 6 of the file wrapper we find the following specification, in the original application:

"A removable head 19 encloses the steam condensing chamber 7, and this head has included therein a dry steam valve 11 and a moisture valve 12.

"A conduit 20 connects the outlets of each of the aforesaid steam and moisture valves, which conduit is intercepted by a hose connection 6, as illustrated in Figure 1."

"Opening dry steam valve 11, exhaust bone dry blue steam from the top portion of the chamber 7, while simultaneously opening each of the valves 11 and 12 syphons water from the bottom of the chamber 7, which water atomizes in passing through the jet of valves 12 and 16, and is mixed with the dry-steam exhausted from the dry steam valve 11."

Reading the aforesaid specification on the drawing submitted therewith, it is manifest that the mixing of steam and water in plaintiff's invention takes place in the conduit above referred to, before the combined mixture passes to the hose leading to the spotting gun. That plaintiff conceived said conduit to be a "mixing chamber" is apparent from his initial claim 1, (File Wrapper, p. 9) wherein he claimed "a mixing conduit connecting the said steam and water outlets having a discharge outlet through which dry or moist steam is discharged." In a "tyranny of words," such claim, considered with the foregoing specifications, and read on the drawing of his invention, could only be understood as the description and claim of a simple "mixing chamber" in plaintiff's invention as originally conceived and as finally claimed and allowed by the letters patent in suit. Other reference may be found in the original specifications which describes and locates a "mixing chamber" as being within the initial concept of plaintiff's invention. There is no merit to defendant's contention of a departure in plaintiff's application and letters patent as respects the claim of a "mixing chamber." Neither do we find any merit in defendant's contention that the location and functions of the "normally closed valves" and the "operating connections" to the actuating members of said valves is indefinite in the description of plaintiff's invention. Suffice to say a person skilled in the art of mechanical construction would have no difficulty in understanding what is disclosed by the specifications and claims of those elements in plaintiff's invention, their location on the drawing accompanying his application, and in the structure thereof.

"If the description in the patent is such that one skilled in the art can follow it and

produce the result" it is sufficient, and "the rule is that patentees are allowed much latitude in terminology, and their language will be accorded the meaning intended if it can be ascertained from the context," of the specifications and claims of a patent. Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, 394. If "the language used in claims is ambiguous, that construction should be adopted which will render the patent valid rather than one which will render it invalid." Kansas City Southern Ry. Co. v. Silica Products Co., 8 Cir., 48 F.2d 503, 505. The claims of the letters patent in suit as finally allowed accord with plaintiff's original concept of his invention and we do not find them ambiguous. No estoppel is shown to exist by the file wrapper debarring plaintiff from making such claims. Estoppel is the only ground on which a claim of departure could be premised. Scharf v. Weinfeld & Kahn, Inc., D.C., 31 F.Supp. 689. As allowed, said claims are "to be read and applied upon their own merits" (Kellog Switchboard & Supply Co. v. Michigan Bell Tel. Co., D.C., 5 F.Supp. 118, 119) and they comport with claims made by plaintiff for his invention in his prosecution thereof before the Patent Office. R. Hoe & Co., Inc., et al. v. Goss Printing Press Co., 2 Cir., 30 F.2d 271. Plaintiff's letters patent are not invalid because of departure or indefiniteness as claimed by defendant.

 This leads us to the prior art. "The issuance of a patent is prima facie evidence of both novelty and utility." Strong-Scott Mfg. Co. v. Weller, supra [112 F.2d 394]. Defendant's device having been found to infringe plaintiff's letters patent, defendant is estopped to deny utility and operability of plaintiff's invention. Kansas City Southern Ry. Co. v. Silica Products Co., supra. All we here need consider is the novelty of plaintiff's invention in relation to the prior art. The burden is upon defendant to persuade us, by evidence of "more than a dubious preponderance" (Radio Corp. of America, v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 8, 55 S.Ct. 928, 931, 79 L.Ed. 163) that the "novelty" of plaintiff's invention has been anticipated in the prior art to which it relates.

In the prosecution of plaintiff's application before the Patent Office, the prior art as revealed by Forbes, 805,277; Chadwick, 1,196,520; Bassett, 1,880,668; Conley et al., 1,923,422; and Morken, 2,174,387; was considered and relied on by the Primary Examiner in rejection of plaintiff's initial claims to letters patent. On appeal to the Board of Appeals, Forbes, Chadwick and Morken were considered. The Board overruled the examiner's disallowance of plaintiff's claims in reliance thereon. The prior art so considered by the Board of Appeals appears to be the best that could have been cited against plaintiff's invention.

"Where references were before the Patent Office and were rejected as anticipations, the presumption of novelty and invention which arises from the grant of the patent is greatly strengthened." Walker on Patents, Deller's Ed., Vol. II, par. 249, p. 1221; Hildreth v. Mostoras, 257 U.S. 27, 32, 42 S.Ct. 20, 66 L.Ed. 112.

 The teaching of plaintiff's letters patent is as to a combination of elements. As stated above, the scope of said patent is to provide a unitarily controlled method of providing steam of varying water content in the art of treating fabrics in dry-cleaning garments. As to the old combination involved in said patent, the Board of Examiners, on appeal, in allowing plaintiff's claim to novelty, said: "It is obvious that the machine of applicant operates in a different manner from those of Forbes and Morken." A new combination of old mechanical elements securing a new and useful result is patentable. Hydraulic Press Mfg. Co. v. Williams, White & Co., 7 Cir., 165 F.2d 489.

 Forbes' patent is an apparatus for applying steam or vapor to starched goods along the line of fold, in order that the fold may be made without danger of breaking the fabric. It requires the separate manipulation of two valves; it does not relate to the dry cleaning art; it has no common operating member whereby the steam valve is opened ahead of the water valve by means of lost motion space which

is predetermined. Morken is a garment spotting apparatus and is within the art contemplated in plaintiff's invention. Morken's patent, however, requires the separate operation of three valves to adjust the moisture content of the steam discharged through its spotting gun. In an advisory opinion (p. 46 File Wrapper) the examiner in Division 27 of the Patent Office, stated: "Applicant's specific device for obtaining steam of desired quality is admittedly different than the ones shown in these references", Morken included. Such conclusions of the examiner and that of the Board of Appeals, supra, are readily apparent from even a cursory comparison of the elements of Forbes' and Morken's inventions with those of plaintiff's device. The principal element of plaintiff's device that manifestly is not anticipated in that prior art is the·unitary control for adjusting the moisture content of steam found in plaintiff's apparatus. Such unitary control is the new and useful features of plaintiff's claims which were allowed by the Board of Appeals as not being anticipated by Morken, and Forbes, and we think rightly so. As to Chadwick, the Board of Appeals distinguished it as follows: "The Chadwick patent does not relate to the art to which claim 3 (claim 3 letters patent) is directed and while Chadwick may show the dispensing apparatus having the common operating member for arms 9 and 10, (of plaintiff's invention) in Chadwick dry steam is never dispensed." (Parentheses added.) We believe that the Board of Examiners aptly distinguished the prior art so referred to and that the claims of plaintiff's letters patent are not anticipated therein. Such decision of the Board of Examiners, on appeal, is entitled to great respect. Hall v. Montgomery Ward & Co., D.C., 57 F. Supp. 430, 439.

Defendant has submitted evidence of other prior art than cited to the Board of Appeals, supra. Bassett, 1,880,668, and Conley, 1,923,422, so relied on, appear to be the only other art that is applicable to plaintiff's invention. The remaining prior art on which the Court received evidence, Nightingale, 798,919, relates to a pneumatic blast device for painting; Warner, 1,256,853, to a water heater designed for heating water with live steam; Furman, 1,268,232, to a device for spraying germicide, liquid or paint in mist form; and Heinrich, 1,382,641, to a paint spray gun. These latter references clearly do not relate to the art to which plaintiff's invention does; consequently, we only consider Bassett and Conley in extenso..

"* * * A machine or combination which is not designed by its maker, nor actually used nor apparently adapted to perform the function of a patented machine or combination, but which is discovered in a remote art and was used under radically different conditions to perform another function, neither anticipates nor limits the scope of the patent. (Citing cases.)" National Hollow Brake-Beam Co., et al. v. Interchangeable Brake-Beam Co. 8 Cir., 1901, 106 F. 693, 702, 703.

Bassett pertains to an "apparatus for treating and cleaning pile fabric materials." Conley is a "device for controlling the wetness of steam" and is used in the dry cleaning industry. Like Forbes and Morken, both Bassett and Conley require the separate manipulation of two or more valves to produce dry and moist steam. The steam discharged from Bassett is through an immovable nozzle attached to a steam reservoir. Conley uses a spotting gun similar to that attached to plaintiff's invention. Either dry steam or wet steam can be delivered by said inventions. However, the unitary control of plaintiff's device is wholly absent in the attainment of that result. Neither Bassett nor Conley teaches a combination of unitary control as does the patent in suit; consequently, plaintiff's combination claim is not anticipated therein. Chicago Lock Co. v. Tratsch, et al., 7 Cir., 72 F.2d 482.

In Parks v. Booth, 102 U.S. 96, 104, 26 L.Ed. 54, the Supreme Court said:

"Where the thing patented is an entirety, consisting of a separate device or of a single combination of old elements incapable of division or separate use, the respondent cannot make good the defense in question by proving that a part of the entire invention is found in one prior patent, printed publication or machine, and another part in another, and so on indefinitely, and from the whole or any given

number expect the court to determine the issue of novelty adversely to the complainant. Bates v. Coe, 98 U.S. 31, 25 L.Ed. 68." 102 U.S. at page 104, 26 L.Ed. 54.

It appears from the reference to Bassett and Conley, et al., in the Patent Office, that the Primary Examiner was of the impression that the old combination of a spotting gun and the manual control of two separate valves in the delivery of either dry or moist steam exhausted the new combination found in plaintiff's invention. Defendant chiefly contends likewise. Such contentions overlook the new combination of elements which provides a single control of dry or moist steam in plaintiff's invention. That new function, unitary control of dry and moist steam, and instantaneously changing the same, in treatment of dry cleaned fabrics, is the element that differentiates plaintiff's invention from the prior art relied on by the defendant. That is the new and useful combination of elements that led the Board of Examiners on appeal to allow plaintiff's claims for his invention.

That such new combination was "novelty" subject to patent was immediately recognized in the dry cleaning industry as evidenced by the universal acceptance of plaintiff's device. Defendant, as a one-time licensee of plaintiff, so recognized it. After defendant cancelled license from plaintiff, it placed its device on the market, side by side with plaintiff's invention, and claimed for its device the identical results of "novelty" that are the subject, and within the scope, of plaintiff's letters patent. Such matters, of course, do not establish patentability nor estop defendant from now claiming invalidity of plaintiff's letters patent. They do, however, tend to impugn the claims of invalidity here asserted by defendant, when the claim of "novelty" so asserted by defendant is obtained in the identical manner, by identical means, as are found in plaintiff's invention. Those facts, with the other evidence before us, convince us by "more than a dubious preponderance" that plaintiff's letters patent are not invalid on the ground of novelty anticipated.

Counsel prepare formal findings of fact and conclusions of law.